**TRANS–CANADA ENTERPRISES, LTD., a corporation, Plaintiff–Appellee,**

v.

**MUCKLESHOOT INDIAN TRIBE, Anthony Little, and John Does 1 through 4, Defendants–Appellants.**

No. 78–3597.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 1980.

Decided Dec. 24, 1980.

Allen H. Sanders, Auburn, Wash., argued for defendants–appellants; Don B. Miller, Boulder, Colo., on brief.

Robert E. Ratcliffe, Seattle, Wash., for plaintiff–appellee.

Barry D. Ernstoff, Ziontz, Pirtle, Morisset, Ernstoff & Chestnut, John K. Hoerster, Houger, Garvey & Schubert, Seattle, Wash., Michael E. Taylor, Carl V. Ullman, Michael P. O'Connell, Taholah, Wash., for Asso. of Cooperating Tribes.

Slade Gorton, Atty. Gen., Olympia, Wash., for State.

Before WRIGHT and ANDERSON, Circuit Judges, and VON DER HEYDT,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

The defendant Muckleshoot Indian Tribe appeals the entry below of a permanent injunction prohibiting the enforcement of a tribal business licensing ordinance against the plaintiff Trans–Canada Enterprises, Ltd. We reverse.

## I. BACKGROUND

The Muckleshoot Indian Reservation is located in King County, Washington, near the city of Auburn. Created pursuant to the Treaty of Medicine Creek, 10 Stat. 1132 (1854), the reservation now contains large tracts of land which are held in fee by non–Indians. The City of Auburn has annexed a portion of the reservation, including an area adjacent to the White River. Since the annexation, the City has asserted land use and zoning jurisdiction over the annexed portion of the reservation.

The Tribe, apparently concerned that the City's zoning policies were inconsistent with tribal perceptions of the most desirable pattern of development, enacted a business licensing ordinance in October 1977. The ordinance required that a tribal business license be obtained prior to the commencement of any business on the reservation, or

prior to embarking on any business–related land development. The ordinance also provided for the establishment of a planning commission to oversee the development–related aspects of the licensing scheme.

Trans–Canada proposes to develop two large tracts of land located within both the boundaries of the reservation and of the City.[1] The proposed development would consist of a high density residential and mobile home subdivision located at or near the banks of the White River. The Tribe has contended that the development will irrevocably alter the usual character of that portion of the reservation, and that it could have an adverse impact on tribal fishing activities.

Trans–Canada has consistently refused to comply with the tribal licensing ordinance, although it claims to have complied with the City's zoning laws. On November 9, 1977, the Tribe filed a civil enforcement action in tribal court seeking to enjoin construction of the development and to compel compliance with the ordinance. The tribal court issued a preliminary injunction against further construction on November 17, 1977. The injunction provided that no construction could take place until it was demonstrated that all requirements of the ordinance had been satisfied, or until a trial on the merits could be had. The injunction set November 29, 1977, as the trial date, which was later continued until December 14.

On December 7, 1977, Trans–Canada filed its complaint in the present action in federal district court seeking injunctive and declaratory relief against enforcement of the tribal business licensing ordinance, and also seeking an unspecified amount of damages. The complaint named as defendants the Tribe, the tribal court judge who had issued the preliminary injunction, and four John Doe defendants described in the complaint

---

* The Honorable James A. von der Heydt, Chief United States District Judge, District of Alaska, sitting by designation.

1. The exact nature of the ownership of the land is unclear and unimportant for the purposes of this litigation. It appears that the land is not owned by any member of the Tribe, though it has been represented by counsel that a dispute as to ownership has arisen. Nothing in this opinion should be taken as a comment on the merits of that dispute, if indeed it exists.

as the tribal police officers who had served the Tribe's injunction on Trans–Canada's agents at the construction site. Trans–Canada's complaint alleged a number of jurisdictional bases, including, *inter alia*, the Indian Civil Rights Act, 25 U.S.C. § 1302, and 28 U.S.C. § 1343 (civil rights enforcement). The complaint further alleged several reasons why the ordinance was not enforceable against Trans–Canada, including a general lack of jurisdiction and violations of the due process and equal protection clauses of the fourteenth amendment. Trans–Canada also moved for a temporary restraining order and preliminary injunction. The Tribe moved to dismiss. The district court denied Trans–Canada's motion on the ground that it had failed to demonstrate that its complaint had probable merit. Trans–Canada subsequently filed a motion for reconsideration, which was granted on July 27, 1978. The district court reversed itself primarily on the authority of the Supreme Court's holding in *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), that the Suquamish Tribe could not assert criminal jurisdiction over non–Indians, and entered a permanent injunction against enforcement of the licensing ordinance. In denying the Tribe's subsequent motion to reconsider, the court clarified its jurisdictional findings by holding that it could assert federal question jurisdiction on the basis of the allegation of fourteenth amendment violations under *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

## II. DISCUSSION

On appeal, the Tribe urges that the district court lacked subject matter jurisdiction. We agree.[2]

■ Trans–Canada alleged several jurisdictional bases which clearly do not supply jurisdiction in this case.[3] In addition to the claimed jurisdictional bases which we dispose of summarily in footnote 3, *supra*, we may reject jurisdiction under the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303, with only brief comment. In *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the Supreme Court held that the Indian Civil Rights Act does not imply a private cause of action for enforcement either in its own right, or in conjunction with 28 U.S.C. § 1343(4). The sole federal remedy for an alleged violation of the Act is application for federal habeas corpus relief under 25 U.S.C. § 1303, 436 U.S. at 70, 98 S.Ct. at 1683. Trans–Canada, therefore, cannot avail itself of the Act in this case.

■ The district court's finding of federal question jurisdiction was based in part upon its assumption that the due process clauses of the fifth and fourteenth amendments were applicable to the Tribe's exercise of its police power over Trans–Canada's proposed construction.[4] Constitutional guarantees, however, are not applicable to the exercise of governmental powers by an Indian tribe except to the extent that they are made explicitly binding by the Constitu-

---

2. In view of our holding that no claim for federal relief was stated, it is unnecessary to pass upon the Tribe's alternative contention that sovereign and judicial immunity bar this action.

3. Trans–Canada alleged jurisdiction under 5 U.S.C. § 703 (the Administrative Procedure Act); 25 U.S.C. § 1302 (the Indian Civil Rights Act); 28 U.S.C. § 1343 (civil rights); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. §§ 2201, 2202 (the Declaratory Judgment Act). On appeal, the parties have argued only the Indian Civil Rights Act, and federal question jurisdiction under *Bell v. Hood, supra*. The others are of no help at all to Trans–Canada.

4. We note that Trans–Canada's complaint did not allege 28 U.S.C. § 1331, the general federal question jurisdictional statute, nor did it allege

an amount in controversy. The district court found that the facts claimed in the complaint indicated that the federal jurisdictional amount would be met. In view of our holding, we find it unnecessary to consider whether this would be an appropriate case to find federal question jurisdiction despite a facially defective pleading. *See Schlesinger v. Councilman*, 420 U.S. 738, 744, n.9, 95 S.Ct. 1300, 1306 n.9, 43 L.Ed.2d 591 (1975). We also decline to rule on the issue of whether § 1331 is an appropriate jurisdictional vehicle in cases wherein Indian tribes or their officers are defendants. However, we instruct the district court to grant leave to amend upon remand.

 

tion or are imposed by Congress. See *Santa Clara Pueblo v. Martinez, supra; Talton v. Mayes,* 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); *Wardle v. Ute Indian Tribe,* 623 F.2d 670 (10th Cir. 1980); *Janis v. Wilson,* 521 F.2d 724 (8th Cir. 1975); *Groundhog v. Keeler,* 442 F.2d 674 (10th Cir. 1970); *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529 (8th Cir. 1967); *Native American Church v. Navajo Tribal Council,* 272 F.2d 131 (10th Cir. 1959); *Barta v. Oglala Sioux Tribe,* 259 F.2d 553 (8th Cir. 1958), *cert. denied,* 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959); *Martinez v. Southern Ute Tribe of Southern Ute Reservation,* 249 F.2d 915 (10th Cir. 1957), *cert. denied,* 356 U.S. 960, 78 S.Ct. 998, 2 L.Ed.2d 1067 (1958). Even though the Indian Civil Rights Act imposes a form of due process limitation upon Indian tribes, 25 U.S.C. § 1302(8), the sole remedy for such a violation, as noted above, is federal habeas relief.

Our decision in *Colliflower v. Garland,* 342 F.2d 369 (9th Cir. 1965), does not alter our analysis here. *Colliflower,* a decision handed down prior to the passage of the Indian Civil Rights Act, held that federal habeas relief was available to an Indian convicted of a minor crime in tribal court because of various procedural deficiencies, including denial of right to counsel and of confrontation. We there held that the tribal courts operating at the Fort Belknap Reservation were functioning in part as a federal agency and in part as a tribal agency due to the considerable financial and advisory support given the Fort Belknap courts by the Bureau of Indian Affairs. We concluded that federal habeas relief was appropriate where the tribal judiciary was so clearly an instrument of federal as well as tribal policy. *See also Settler v. Yakima Tribal Court,* 419 F.2d 486 (9th Cir. 1969), *cert. denied,* 398 U.S. 903, 90 S.Ct. 1690, 26 L.Ed.2d 61 (1970). *Colliflower* did not go so far as to hold that the due process clause was applicable in all instances to tribal courts. In any event, the Supreme Court has since reaffirmed the principle that the Constitution is generally not binding upon Indian tribes in *Santa Clara Pueblo, supra.*

We note also that the challenged tribal action here is not a question of procedure before a tribal court in a criminal matter, but an exercise of tribal sovereignty and the powers of self–government.

Because the fifth and fourteenth amendments are not applicable to tribal action except to the extent provided for by Congress, we hold that the district court erred in predicating jurisdiction upon principles of *Bell v. Hood, supra.* There being no other basis for federal jurisdiction over this dispute, we accordingly hold that the complaint should have been dismissed.

III. CONCLUSION

The judgment of the court below is REVERSED with instructions to dismiss the complaint with leave to amend.