**R. J. WILLIAMS COMPANY, Richard J. Williams and Fireman's Fund Insurance Company, Plaintiffs,**

v.

**FORT BELKNAP HOUSING AUTHORITY and Fort Belknap Tribal Court, Defendants.**

**No. CV–80–104–GF.**

United States District Court, D. Montana, Great Falls Division.

March 2, 1981.

On Motion For Summary Judgment March 20, 1981.

Bruce P. Babbitt, Ferguson & Burdell, Seattle, Wash., Jack L. Lewis, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for plaintiffs.

Francis X. Lamebull, Harlem, Mont., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR PRELIMINARY INJUNCTION

HATFIELD, District Judge.

THIS MATTER came on for hearing on the motion of the plaintiffs for a preliminary injunction. Defendants, Fort Belknap Tribal Court and Fort Belknap Housing Authority, thereafter moved to dismiss. From the files and pleadings, affidavits and testimony adduced, the court makes the following findings and conclusions:

1. Plaintiff R. J. Williams Company and Richard J. Williams are citizens of the State of Washington.

2. Plaintiff Fireman's Fund Insurance Company is a citizen of the State of California.

3. Defendant Fort Belknap Housing Authority is an Indian housing authority formed under the authority of the United States Housing Act of 1937 (42 U.S.C. § 1437, et seq.) and a citizen of the State of Montana, whose powers, duties and authority are circumscribed by Title 24 C.F.R. § 805 (Department of Housing and Urban Development Indian Housing). The form of the ordinance was dictated by 24 C.F.R.

§ 805.109 and § 805.110. The portions of the mandatory ordinance adopted by the Fort Belknap Housing Authority included Article 5, Section 2:

> The council (i. e., the Tribal council) here gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have; but the Tribe shall not be liable for the debts or obligations of the Authority.

4. In October of 1976, Williams Brothers Building Contractors, a joint venture of G.R. Construction Company, a corporation, and Havre Ready-Mix, Inc., a corporation, contracted with the Fort Belknap Housing Authority to build 50 mutual self-help single family houses under HUD Montana Project 10–10 for a contract price of $1,811,456.00.

5. On the 18th day of October, 1976, Fireman's Fund Insurance Company executed and delivered to the Fort Belknap Housing Authority its payment and performance bond in the sum of $1,888,256.00.

6. Disputes arose between the parties and on March 31, 1980, Francis Lamebull, contract attorney for the Fort Belknap Housing Authority, executed an attachment affidavit and applied to the Fort Belknap Tribal Court to attach property he alleged was owned by R. J. Williams Company and Richard J. Williams, which property was worth approximately $60,000. The execution was based on allegations of breach of the Project 10–10 contract although R. J. Williams and R. J. Williams Company were not parties to that contract.

7. Included in the property seized was property owned by the Hays/Lodge Pole School District, which property was subsequently released upon application to the Tribal Court by that School District.

8. At the time of the attachment by the Tribal Court, the jurisdiction of the court under civil matters was set out under

§ 14.1, *Jurisdiction in Civil Matters*, of the Fort Belknap Law and Order Code, 1970 Edition.

The Fort Belknap Community Court shall have jurisdiction of all civil suits wherein the defendant is a member of the Fort Belknap Indian Community, and of all other civil suits between members and non-members which are brought before the court by stipulation of both parties.

9. At all times material to any attachments of Williams' property, § 14.1 was the only jurisdictional grant under which the Tribal Court operated on civil matters.

10. Neither R. J. Williams Construction Company, Richard J. Williams, or Fireman's Fund ever stipulated to the court's jurisdiction.

Plaintiffs' attorneys moved in Tribal Court to quash the attachment and have the goods released, but as far as this court is aware the rulings are pending.

11. On September 19, 1980, the complaint and action for injunction and damages of plaintiffs were filed with the U. S. District Court at Great Falls against the Fort Belknap Housing Authority and the Fort Belknap Tribal Court. On September 24, 1980, service of summons and complaint was accomplished upon Dallas Howard, authorized representative of the Fort Belknap Housing Authority. Plaintiffs prayed for a temporary restraining order and preliminary injunction prohibiting defendants from, *inter alia*, withholding from R. J. Williams the materials then under attachment, interfering with the use of the property for movement and suing out any further attachment proceeding in any other court or forum or without an adequate bond. Plaintiffs alleged, *inter alia*, violation of federal statutes, deprivation of constitutional rights and damages in excess of $10,000 from the attachment.

Plaintiffs' proposed injunction was directed at the Housing Authority, its attorney, agents and those in active concert or privity with it, as well as the Tribal Court.

12. The defendants filed their motions to dismiss on October 1, 1980.

13. On September 12, 1980, the Fort Belknap Indian Community brought suit against R. J. Williams Company and Richard J. Williams, individually, for $8,718.25 for an alleged balance owing on a lease of warehouse space from the Indian community and other damages allegedly rising out of the non-payment. On the same day an order for temporary injunction and to show cause issued by the Tribal Court ordering that Richard J. Williams and R. J. Williams Company show cause within ten days of receipt of service why preliminary injunction should not issue, enjoining Williams' removal of any or all property in the tribal warehouse pending a hearing determining whether or not a permanent injunction should be granted.

14. It is alleged by plaintiff that:

(a) A notice of hearing on the temporary restraining order sought by the Indian community restraining Williams from removing any of his property was filed on October 13, 1980, after the filing of the federal court action and this court's initial determination to hold a hearing on Williams' request for injunctive relief;

(b) The Tribal Court hearing was held on October 20, 1980, and the attorney appearing for the Indian community in its attempt to enjoin Williams' removal of his goods was Francis X. Lamebull, who is also the attorney for the Fort Belknap Housing Authority;

(c) Francis X. Lamebull on October 23, 1980, stipulated on behalf of the tribal community in that action with local counsel, Keith Maristuen of Havre, Montana, for R. J. Williams to set a hearing over until November 3, 1980; and

(d) There has been and is no temporary injunction issued pursuant to hearing by the Fort Belknap Tribal Court on the claim of the Fort Belknap Indian Community since its initial notice of September 12, 1980.

15. On this court's order on November 21, 1980, an evidentiary hearing was held on plaintiffs' motion for a preliminary injunc-

tion against defendants and defendants' motion to dismiss. The parties then furnished the court supplemental authorities, primarily on the issue of jurisdiction.

16. By affidavit of Richard J. Williams it is alleged that since the hearing on the motions for preliminary injunctions and to dismiss, the Housing Authority made application to the Fort Belknap Tribal Court for release of certain of R. J. Williams' materials, to-wit: C-type windows, valued at approximately $4,000 to the Housing Authority for the Housing Authority to convey to the firm of Bell, Doney & Warner to be used on other construction projects on the reservation.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the plaintiffs and over the Fort Belknap Housing Authority and the controversy under 28 U.S.C.A. § 1332, and 28 U.S.C.A. § 1331, a federal question arising under the constitution or laws of the United States. The requisite jurisdictional amounts have been met by the pleadings of the plaintiff. The Housing Authority's motion to dismiss for want of jurisdiction is accordingly denied.

2. This court is without jurisdiction over the Fort Belknap Tribal Court. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe*, 634 F.2d 474 (9th Cir. 1980); but see, *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980). Accordingly, the Fort Belknap Tribal Court's motion to dismiss is hereby granted. The court will, at a later date, file a memorandum explaining this ruling.

3. The Fort Belknap Tribal Court had no jurisdiction over the plaintiffs or their property under the applicable law and order code of the Tribe at the time of any seizure of the property.

4. Constitutional requirements of due process were not complied with in the issuance of the attachment.

5. Plaintiffs have shown sufficient probability of success on the merits of their

complaint against the Housing Authority for injunctive relief to issue.

6. The burden upon the defendants is materially less than the burdens upon the plaintiffs if injunctive relief be ordered against the Housing Authority in that the defendants have a performance and payment bond answerable for any contractor's breaches or defaults on Project 10–10. Plaintiffs are being deprived of the use of their property.

7. Plaintiffs have no plain, speedy or adequate remedy at law should the Housing Authority not be enjoined.

8. A preliminary injunction will protect the ability of this court to expedite its orders and decrees against the Housing Authority.

9. This court has jurisdiction to restore the *status quo* by mandatory injunctive relief. Such relief is proper under the circumstances of this case because the defendants are not prejudiced. There exists a bond to cover all just claims made in a proper forum.

## PRELIMINARY INJUNCTION

Based upon the above findings of fact and conclusions of law, IT IS HEREBY ORDERED that the Fort Belknap Housing Authority, its attorneys, including but not limited to, Francis X. Lamebull, its agents, assignees and all those in active concert or privity with them are enjoined, pending the trial on the merits of this action, from:

1. Selling, conveying or otherwise disposing of goods, equipment, materials and other property which were seized pursuant to the March, 1980 attachment proceeding initiated by the Fort Belknap Housing Authority. This includes enjoinment from bringing any such motions or proceedings before the Tribal Court which would or may have the effect of disposing or removing any of the property involved.

It is further ORDERED that the Fort Belknap Housing Authority, through counsel, shall appear at a hearing on Monday, the 16th day of March, 1981, at the hour of 10:00 o'clock A.M., to respond to allegations

that upon its application to Tribal Court, construction materials seized under the attachment proceedings are being sold or otherwise disposed of to third parties. The materials consist of certain C-type windows. Such hearing will further determine the amount of bond to be posted by the Fort Belknap Housing Authority.

## MEMORANDUM

On Motion For Summary Judgment

HATFIELD, District Judge.

This case involves the alleged violation of fundamental federal rights of United States citizens. Because the alleged wrongs were committed on an Indian reservation, however, plaintiffs have no federal remedy. This action was initiated in this court because of allegations that defendant, Fort Belknap Tribal Court, without notice or hearing, issued an order attaching construction materials owned by plaintiff, R. J. Williams Co., and located within the Fort Belknap Indian Reservation.

The court has heretofore set forth in detail its findings of fact and conclusions of law in this matter. This memorandum addresses the court's ruling dismissing the Tribal Court. The essential facts are as follows:

In October, 1976, plaintiffs entered into a building contract with the Fort Belknap Housing Authority to build 50 houses on the Fort Belknap Reservation. Plaintiffs thereafter executed and delivered to the Housing Authority an appropriate performance bond. Toward the completion of the project, in March 1980, warranty disputes arose between the parties. As a conse-

quence of these disputes an attorney for the Housing Authority applied to the Fort Belknap Tribal Court for an attachment of approximately $60,000 worth of property owned by R. J. Williams Co. and Richard J. Williams. The Tribal Court ordered the property attached. No notice was given prior to the issuance of the writ of attachment nor were the parties given an opportunity to be heard on the merits of the attachment. In short, the most fundamental elements of due process—notice and hearing—were ignored when a tribal judge ordered the seizure of plaintiffs' property.

In April of 1980, plaintiffs moved with supporting briefs to quash the order of attachment and dismiss the underlying complaint. To date the Tribal Court has not ruled on the motions.

On September 19, 1980, plaintiffs filed in this court their complaint and application for preliminary injunction against the Fort Belknap Housing Authority and the Fort Belknap Tribal Court. The court found jurisdiction over the Housing Authority,[1] but now holds that it has no jurisdiction over the Tribal Court. At the time the Tribal Court issued its order of attachment, the Tribal Court's jurisdiction was governed by the 1970 Edition of the Fort Belknap Law and Order Code. Section 14.1, entitled JURISDICTION IN CIVIL MATTERS read:

The Fort Belknap Community Court shall have jurisdiction of all civil suits wherein the defendant is a member of the Fort Belknap Indian Community and of all other civil suits between members and non-members which are brought before the court by stipulation of both parties.[2]

See also, 24 C.F.R. § 805.109 and § 805.110.

1. This court found jurisdiction over the Fort Belknap Housing Authority by virtue of "sue and be sued" clause. It states:

The council (i. e., the Tribal council) here gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have; but the Tribe shall not be liable for the debts or obligations of the Authority.

2. On August 5, 1980, the Tribal Law and Order Code was amended to provide the Tribal Court with general "jurisdiction not prohibited by federal or tribal law over all persons and property." This amendment would arguably give the Tribal Court jurisdiction to hear the contract dispute and determine the propriety of the attachment. Nevertheless, this court rejects the argument that the amendment to the Tribal Court's jurisdiction can have retroactive operation so as to cure the jurisdictional defect with the original attachment order.

Plaintiffs are not members of the Tribe. None of the plaintiffs stipulated to the Tribal Court's jurisdiction. Thus it is clear the Tribal Court was without jurisdiction to order the attachment. Moreover, because the Tribal Code under which the Tribal Court was working did not confer jurisdiction upon the court, the plaintiffs were, in effect, forumless.

Plaintiffs sought a forum in this court. Their complaint sought damages and injunctive relief. Plaintiffs sought to restrain the defendants from withholding and from interfering with the use of their property.

Plaintiffs alleged jurisdiction over the Tribal Court under the following bases: 28 U.S.C. § 1332, diversity jurisdiction; 28 U.S.C. § 1331(a), federal question jurisdiction; 42 U.S.C. § 1983, civil rights claim in conjunction with 28 U.S.C. § 1343(3); and 25 U.S.C. § 1302, the Indian Civil Rights Act ("ICRA").

■ Since there is little question that the first three cited statutes do not confer federal jurisdiction over a tribe or tribal court,[3] the only remaining issue is whether the ICRA gives this court jurisdiction.

This court in this case has no jurisdiction over the Fort Belknap Tribal Court. The defendant's motion to dismiss the Tribal Court therefore must be granted. The decisions of the Supreme Court, as construed by the Ninth Circuit Court of Appeals, compels this court to rule that plaintiffs have no redress in this court for their alleged injuries.

■ As stated, plaintiffs claim that the Tribal Court summarily ordered the attachment of plaintiffs' property without affording plaintiffs their due process right to a meaningful pre-attachment hearing. Furthermore, as this court found previously, the tribal ordinance itself explicitly disclaimed jurisdiction over non-Indians such as plaintiffs. The alleged Tribal Court actions, if proven, would be in clear violation of plaintiffs' rights to due process under 25 U.S.C. § 1302(8) of the ICRA.[4]

■ Plaintiffs, however, have no remedy in this court for the alleged violation of their right, under the ICRA, to due process of law. The Supreme Court has held that the only remedy for enforcement of rights under the ICRA is the 25 U.S.C. § 1303 writ of habeas corpus. "§ 1302 does not impliedly authorize actions for declaratory or injunctive relief against either the Tribe or its officers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72, 98 S.Ct. 1670, 1684, 56 L.Ed.2d 106 (1978).

This case illustrates the absurd results that the broad rule of *Martinez* can cause. The Fort Belknap tribal code expressly states that the tribal courts shall have no jurisdiction over non-Indians. The Tribal Court nonetheless exercised jurisdiction over plaintiffs who are non-Indians. The Tribal Court next ordered plaintiffs' property attached, allegedly in clear violation of plaintiffs' due process rights. Plaintiffs, however, have no remedy in federal court to enforce their statutory right to due process.

This court initially considered distinguishing *Martinez* on its facts. The tribal sovereignty concerns were considerably more weighty in *Martinez* than in this case. *Martinez* was an action by Indians against the Tribe, while this is an action brought by non-Indians. Whereas *Martinez* involved questions of eligibility for tribal membership, this case involves routine issues of contract law which are hardly "... questions of tribal tradition and custom which tribal courts may be in a better position to evaluate than federal courts." *Martinez, supra*, 436 U.S. at 71, 98 S.Ct. at 1683.

---

3. *See, e. g., Boe v. Fort Belknap Indian Community*, 642 F.2d 276 (9th Cir. 1981); *Trans-Canada Enterprises v. Muckleshoot Indian Tribe*, 634 F.2d 474, 476 and n.3 (9th Cir. 1980); *Wilson v. Turtle Mountain Band of Chippewa Indians*, 459 F.Supp. 366, 369 (D.N.D.1978).

4. The ICRA applies to non-Indians, such as plaintiffs, as well as to Indians. *See, Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 934, n.8 (10th Cir. 1975); *Schantz v. White Lightning*, 502 F.2d 67, 70, n.5 (8th Cir. 1974); *Dodge v. Nakai*, 298 F.Supp. 17, 24–25 (D.Ariz. 1968).

Moreover, the court in *Martinez* specially emphasized that the litigants could properly seek redress of their tribal claims in the tribal courts. "Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians." *Martinez, supra,* 436 U.S. at 65, 98 S.Ct. at 1680. "Judgments of tribal courts, *as to matters properly within their jurisdiction,* have been regarded in some circumstances as entitled to full faith and credit in other courts. *Martinez, supra,* 436 U.S. at 66, 98 S.Ct. at 1681. (emphasis added). In this case, the matter is not properly within the jurisdiction of the Tribal Court.[5] The tribal ordinance expressly provides that the Tribal Court has no jurisdiction over this matter. If this court does not have jurisdiction, no court has jurisdiction.

The Supreme Court in *Martinez* could have limited its holding to the facts before it. Indeed, the Supreme Court has held that broad language unnecessary to Supreme Court decisions cannot be considered binding authority. *Kastigar v. United States,* 406 U.S. 441, 454–455, 92 S.Ct. 1653, 1661–1662, 32 L.Ed.2d 212 (1972). *See also, Oppen v. Aetna Insurance Co.,* 485 F.2d 252, 257, n.12 (9th Cir. 1973).

The Tenth Circuit Court of Appeals, the court from which the tribe petitioned to the Supreme Court in *Martinez,* has found jurisdiction under the ICRA in a case factually similar to this case. The court implicitly used the *Kastigar* reasoning to distinguish *Martinez* and to hold the broad rule of *Martinez* inapplicable. *See, Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes,* 623 F.2d 682 (10th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1421, 67 L.Ed.2d 385 (1981).

The plaintiffs in *Dry Creek Lodge,* like plaintiffs in this case, were non-Indians who sued an Indian tribe. The suit in *Dry Creek Lodge,* like the suit in this action, did not involve sensitive internal tribal affairs such as were present in *Martinez. Dry Creek Lodge,* rather, involved asserted infringements of non-Indian plaintiffs' personal and property rights. Last, the plaintiffs in *Dry Creek* and plaintiffs in this case both would be deprived of access to a court of competent jurisdiction if the federal court dismissed the suits.

In distinguishing *Martinez* and remanding the case to the federal district court for trial, the majority in the *Dry Creek* Tenth Circuit panel decision reasoned as follows:

> ... The problem [in *Martinez*] was thus strictly an internal one between tribal members and the tribal government relating to the policy of the Tribe as to its membership. Of course, there were no non-Indians concerned.

> ... Much emphasis was placed in the [*Martinez*] opinion on the availability of trial courts and, of course, on the intra-tribal nature of the problem sought to be resolved. With the reliance on the internal relief available the Court in *Santa Clara* places the limitation on the Indian Civil Rights Act as a source of a remedy. But in the absence of such other relief or remedy the reason for the limitations disappears.

> The reason for the limitations and the references to tribal immunity also disappear when the issue relates to a matter outside of internal tribal affairs and when it concerns an issue with a non-Indian.

*Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes, supra,* 623 F.2d at 685.

Judge Holloway dissented from the majority decision in *Dry Creek.* The judge reasoned that the broad terms of the *Martinez* holding left no basis for limiting that holding to its facts.

---

**5.** This case, therefore, is distinguishable from *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), where the non-Indian plaintiff had a legitimate Tribal remedy, and from *United States v. Jackson,* 600 F.2d 1283 (9th Cir. 1979), wherein the tribe had jurisdiction over a transaction, but no enforcement procedures. *See also, Rodriguez v. LaJolla Band of Mission Indians,* 7 I.L.R. 3088, 3089 (S.D.Cal. 1980). Here, the tribe expressly disclaimed jurisdiction over non-Indians such as plaintiffs.

The Supreme Court declined the opportunity to clarify the parameters of *Martinez*. Although three justices, including Justice Marshall, the author of *Martinez*, would have granted *certiorari*, the Supreme Court on January 19, 1981, denied *certiorari* in *Dry Creek*.

This court, though, cannot in good faith follow the lead of the Tenth Circuit in *Dry Creek* and grant jurisdiction over the tribe in this case. In this court's view, the Ninth Circuit Court of Appeals would adopt the reasoning of Judge Holloway's dissent, rather than the majority holding in *Dry Creek*. The Supreme Court's holding in *Martinez* was broad, uncategorical, and, regrettably, not confined to the facts in the case before it. The Ninth Circuit Court of Appeals, in interpreting *Martinez* in a case where non-Indian plaintiffs sued a tribe, has held that "[e]ven though the Indian Civil Rights Act imposes a form of due process limitation upon Indian tribes, 25 U.S.C. § 1302(8), the sole remedy for such a violation, as noted above, is federal habeas relief." *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe*, 634 F.2d 474, 477 (9th Cir. 1980).[6]

█ This court, therefore, must reluctantly hold [7] that, although plaintiffs have a federal right to due process in any proceeding by the Tribe to take plaintiffs' property, plaintiffs have no legitimate remedy—federal or tribal—to redress the alleged violation of that federal right.

The concerns which Chief Justice John Marshall voiced in a landmark case with different facts seem no less applicable here.

... If he has a right, and that right has been violated, do the laws of this country afford him a remedy?

The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.

\*    \*    \*    \*    \*    \*

... [E]very right, when withheld, must have a proper remedy, and every injury its proper redress.

The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 162–163, 2 L.Ed. 60 (1803).

This court holds, under the facts of this case and the rule of *Martinez* and *Trans-Canada Enterprises*, that plaintiffs have a right to due process but no legitimate legal remedy for violation of that right. For these reasons, the Fort Belknap Tribal Court's motion for summary judgment has been granted.

---

**6.** The plaintiffs in *Trans-Canada Enterprises*, unlike the plaintiffs in *Dry Creek Lodge* or plaintiffs herein, did have access to a legitimate tribal forum. This distinction, however, does not remove this case from the rule of *Martinez* or *Trans-Canada Enterprises*, in light of the expansive language of those decisions. *See also, Boe v. Fort Belknap Indian Community, supra.*

The only avenue available to a party who seeks relief in the federal courts for an alleged violation of the ICRA is through an application for habeas corpus relief under 25 U.S.C. § 1303. *Id.* [*Martinez,* 436 U.S.] at 70, 98 S.Ct. at 1683; *Trans-Canada Enterprises, Inc. v. Muckleshoot Indian Tribe, etc.,* 634

F.2d 474, 476 (9th Cir. 1980). No other private cause of action may be implied from the ICRA....

*Boe v. Fort Belknap Indian Community, supra,* 642 F.2d 276 at 278.

**7.** This court, of course, may look to the Tenth Circuit decision for guidance, but is bound by decisions of the Ninth Circuit Court of Appeals. *See, e. g., Gunther v. Washington County,* 623 F.2d 1303, 1319 (9th Cir. 1980), *cert. granted,* —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980); *Willis v. United States,* 614 F.2d 1200, 1204 (9th Cir. 1979); *Lakeside Community Hospital v. Tahoe Regional Planning Agency,* 461 F.Supp. 1150, 1153 (D.Nev.1978).