# Supreme Court of the Navajo Nation

**Blanche Raymond, Appellant,**

v.

**Navajo Agricultural Products Industry, et al., Appellees.**
**Decided July 20, 1995**

## OPINION

Before YAZZIE, Chief Justice, CADMAN and *TOLEDO (*by designation), Associate Justices.

F.D. Moeller, Esq., Farmington, New Mexico, for the Appellant; and James J. Mason, Esq., Gallup, New Mexico, for the Appellees.

Opinion delivered by YAZZIE, Chief Justice.

This is an appeal of a decision by the Window Rock District Court which granted a summary judgment to Navajo Agricultural Products Industry (NAPI). The District Court held that Raymond's claims were barred under the Navajo Sovereign Immunity Act.

I

Raymond is an enrolled member of the Navajo Nation. On November 18, 1992, Raymond was terminated from her position as the Personnel Assistant/EAP Coordinator with NAPI. Upon completing a grievance procedure, NAPI reinstated Raymond in a February 11, 1993 agreement placing her in the same position she held prior to termination. This agreement required a cooperative working relationship toward the best interests of NAPI.

In the period following her reinstatement, Raymond claims that she was sexually harassed and assigned duties inconsistent with the reinstatement agreement. On June 17, 1993, Raymond filed another grievance regarding these complaints but no action was taken by NAPI in respect to it. On June 21, 1993, Raymond was again terminated.

On September 21, 1993, Raymond commenced suit against NAPI in the Window Rock District Court seeking money damages. She claimed that NAPI's actions were breaches of her employment contract and reinstatement agreement, that she was sexually harassed, that she suffered from the intentional infliction of emotional distress, and that she was wrongfully terminated. On November 19, 1993, NAPI filed a motion for summary judgment. On June 27, 1994, the District

142

Court ruled that the Navajo Sovereign Immunity Act barred all of Raymond's claims.

On September 26, 1994, Raymond brought this appeal. On appeal, Raymond presents civil rights arguments that were not before the lower court.

## II

Under the Navajo Sovereign Immunity Act, the Navajo Nation is immune from suit. 1 N.T.C. § 353(a) (1980). This immunity from suit is an inherent attribute of Navajo sovereignty and not judicially created by any court, including the Navajo courts, and is not bestowed upon the Nation by the United States government, or any other government. 1 N.T.C. § 353(b) (1988). The Navajo Nation Council, as the governing body of the sovereign Navajo Nation, has the power to limit the jurisdiction of the Navajo courts, especially in suits against the Nation. 1 N.T.C. § 353(c) (1988). The Act recognizes that the People of the Nation have rights and interests (as enacted in the Navajo Nation Bill of Rights), and that these rights and interests are limitations of the Nation's sovereign powers. 1 N.T.C. § 353(e) (1986). Thus, the Act provides individuals with specific remedies and redress from governmental actions which are violative of the people's rights. 1 N.T.C. § 353(e) (1986). There are four exceptions to the Nation's immunity from suit under the Act. This Court finds that none of Raymond's claims fall within the Act's provided exceptions.

### A

First, the Navajo Nation may be sued when "*explicitly* authorized by *applicable* federal law." 1 N.T.C. § 354(b) (1980) (emphasis supplied). Raymond, citing *Nez v. Bradley*, 3 Nav. R. 126 (1982), claims that the Navajo Nation Courts will hear "constitutional" claims, as stated in the Indian Civil Rights Act (ICRA), and that the Nation cannot "hide behind" its sovereign immunity. Raymond misinterprets *Nez*. The court in *Nez* distinguished between laws that expand rights and those which expand jurisdiction. The court denied "that [the ICRA] gives any new jurisdiction to [the] tribal court, because tribal court jurisdiction comes from the sovereignty of the tribe or nation which establishes the court." *Id.* at 130-31.

This Court in *TBI Contractors, Inc. v. Navajo Nation*, 6 Nav. R. 57, 60 (1988), agreed with the U.S. Supreme Court's decision in *Santa Clara Pueblo v. Martinez*, 436 U.S. 59 (1978), in that the ICRA does not waive a tribe's sovereign immunity from suit. *See Johnson v. The Navajo Nation*, 5 Nav. R. 99 (1987). Since immunity from suit is an inherent attribute of the Nation's sovereignty, a federal law must expressly waive the Nation's immunity from suit to be "applicable federal law." It is the finding of this Court that the ICRA is not an applicable federal law under the meaning of section 354(b) of the Act. In addition, the ICRA does not explicitly waive the Nation's immunity from suit as required by

the Act. *TBI Contractors*, 6 Nav. R. at 60. This Court reiterates that the Nation's immunity from suit has not been explicitly waived by the ICRA.

B

The second exception to the Nation's immunity from suit under the Sovereign Immunity Act is when the Navajo Nation Council explicitly authorizes suit by resolution. 1 N.T.C. § 354(c) (1980). Raymond has not identified a Council resolution that would allow her claims.

C

The third exception is for claims within the express coverage and not excluded by the commercial liability insurance carried by the Nation. 1 N.T. C. § 354(f) (1988). To determine whether Raymond's claims are expressly covered and not excluded by commercial liability insurance, it is necessary to examine NAPI's insurance policy with Fireman's Fund Insurance Company. This policy covers damages that NAPI becomes legally obligated to pay for bodily injury, property damage, personal injury, and public officials' errors and omissions. The policy expressly excludes liability for:

> employment-related or personnel practices, policies, acts, errors or omissions including but not limited to ... termination of employment ... [and] coercion, criticism, demotion, promotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, ... or consequential injury as a result of ... [the] above. Fireman's Fund Policy sections I.C.2.c. (2), (5) and I.C.2.d.

The policy also expressly excludes public officials' errors and omissions arising out of "failure to perform or breach of a contractual obligation...." Fireman's Fund Policy section I.C.24.e. Therefore, this Court finds that all five of Raymond's original claims are either expressly excluded or not included in the policy's coverage.

Raymond asserts that the Nation cannot hide behind its sovereign immunity for suits claiming violations of her civil rights. She is right, but for the wrong reason. In arguing that the Nation cannot enact laws that are violative of U.S. Constitutional guarantees, Raymond is wrong. "Constitutional guarantees... are not applicable to the exercise of governmental powers by an Indian tribe except to the extent that they are made explicitly binding by the Constitution or are imposed by Congress." *Trans-Canada*, 634 F.2d 474, 477 (1980); *See Santa Clara Pueblo v. Martinez, supra*; *Talton v. Mayes*, 163 U.S. 376 (1896); *Native American Church v. Navajo Tribal Council*, 272 F.2d 131 (10th Cir. 1959).

Indeed, the Nation does not attempt to hide behind sovereign immunity for civil rights claims. The Act itself mandates that commercial liability policies must contain a provision regarding civil rights violations. Under section

354(f)(5) of the Act, the Nation's commercial liability policies must contain a provision covering damages resulting from "wrongful deprivation of civil rights." The policy contains such a provision at sections III.P. and III.S.:

> *Public Officials' Errors and Omissions* means any and all *Wrongful Acts* by an *Insured* in the discharge of duties for the *Named Insured....* *Wrongful Act* means any actual or alleged error or misstatement, omission, act of neglect or breach of duty including misfeasance, malfeasance, and nonfeasance by the *Insured*. *Wrongful Act* includes actual or alleged violations of antitrust statutes, negligent ministerial acts, and violations of federal or state civil rights providing coverage is otherwise afforded under this policy (emphasis in original).

Also, the Act provides for prospective mandamus or injunctive relief for these types of claims as discussed below. 1 N.T.C. § 354(g)(1) (1986).

A person seeking redress of civil rights violations must establish that Navajo Nation courts have jurisdiction to hear her claims. If the claimant is suing the Nation, the claimant must, as a jurisdictional predicate, establish that the Nation's immunity from suit has been waived. Since the "jurisdiction and powers of the [c]ourts of the Navajo Nation, particularly with regard to suits against the Navajo Nation, are derived from and limited by the Navajo [Nation] Council," 1 N.T.C. § 353(c) (1988), the claimant must look to the Council for a waiver of the Nation's immunity from suit. The Council has provided exceptions to the Nation's immunity from suit in the Sovereign Immunity Act. The claimant must apply her claims to the provided exceptions under the Act. It is the duty of the District Court to determine if her claims are civil rights claims and if they are exceptions to immunity under the Act.

This Court agrees with the District Court in that Raymond's claims are not civil rights claims but employment-related claims. The civil rights claims that Raymond raises on appeal were not part of her original complaint and therefore cannot be raised for the first time on appeal. *Gudac v. Marianito*, 1 Nav. R. 385, 394 (1975).

### D

The final exception to the Nation's immunity from suit under the Act states that "[a]ny officer, employee or agent of the Navajo Nation may be sued in the [c]ourts of the Navajo Nation to compel him/her to perform his/her responsibility under the expressly applicable laws of the United States and of the Navajo Nation, which shall include the Bill of Rights of the Navajo Nation...." 1 N.T.C. § 354(g) (1986). This is limited to prospective mandamus and injunctive relief. 1 N.T.C. § 354(g)(1) (1986). Raymond is not seeking prospective mandamus or injunctive relief, but is specifically seeking an amount equal to "a sum calculated to reimburse her or her damages," i.e., retrospective monetary relief. Accordingly, this Court holds that Raymond's claims do not constitute a waiver of the Nation's immunity from suit under section 354(g) of the Act.

## III

Raymond is wrong in her assertion that breach of contract claims against the Nation are exempted from sovereign immunity under the Sovereign Immunity Act. She asserts that this Court, in *TBI Contractors*, *supra*, suggested that the Nation's immunity from suit does not apply to breach of contract suits. That is incorrect. In *TBI Contractors*, this Court suggested that the appellants should have argued that the provisions of the contract contained a waiver of immunity from suit. *Id.* at 61. The contract in TBI Contractors was approved by the Navajo Nation Council; therefore, if it contained a provision waiving the Nation's immunity from suit, immunity would be waived under section 354(c) of the Act. The Act does not provide for a waiver of immunity in contract disputes *per se*. A claimant seeking to sue the Nation for breach of contract must, as in any other claim, state a claim that falls under the express exceptions to the Nation's immunity from suit provided in the Act, Again, this Court finds that all of Raymond's claims are barred by the Sovereign Immunity Act.

Is Raymond denied an opportunity to obtain a just remedy for the alleged illegal actions of the Nation? The answer to this question is unequivocally "no." The stated purpose of the Act is to "balance the interests of individual parties in obtaining the benefits and just redress to which they are entitled ... while at the same time protecting the legitimate public interest in securing the purposes and benefits of their public funds and assets...." 1 N.T.C. § 354(a) (1985). The exceptions are consistent with this language. If a plaintiff's claims are covered expressly, and not excluded by the Nation's insurance coverage, then a plaintiff may seek retrospective monetary relief. This is the relief that Raymond seeks. Since her claims are not covered by the provisions of the Fireman's Fund Policy, her claims are barred by the Nation's immunity from suit.

Raymond should have sought an administrative remedy under the Navajo Preference in Employment Act (NPEA). According to the NPEA, "[a]ll employers shall not penalize, discipline, discharge nor take any adverse action against any Navajo employee without just cause." 15 N.T.C. § 604B(8) (1990). A potential claimant can file a charge with the Office of Navajo Labor Relations, the agency responsible for the monitoring and enforcement of the NPEA. 15 N.T.C. §§ 610A and B (1990). NPEA provides for full enforcement and remedy in sections 10 through 12 (codified at 15 N.T.C. §§ 610-612 (1990)). Remedies available to plaintiffs are both prospective and retrospective. Appeal to the Navajo Nation Supreme Court is available to any party under the NPEA. 15 N.T.C. § 613A (1990). Raymond should have exhausted her administrative remedies before seeking relief in the courts. *Begay v. Board of Election Supervisors*, 2 Nav. R. 120, 125 (1979).

## IV

All of Raymond's claims are barred by the Navajo Sovereign Immunity Act, and this Court affirms the decision of the Window Rock District Court.