NATIONAL FARMERS UNION INSUR-
ANCE COMPANIES, a Utah corpora-
tion, and Lodge Grass School District
No. 27, Plaintiffs,

v.

CROW TRIBE OF INDIANS OF MON-
TANA, the Crow Indian Tribal Council,
the Tribal Court of the Crow Indian
Reservation, Eddie Roundface, Glen Bir-
dinground, Ira Left Hand, Judges of the
Tribal Court of the Crow Indian Reser-
vation, Donald Stewart, Chairman of the
Crow Indian Tribal Council, and Leroy
Sage, a minor, by Flora Not Afraid, his
guardian, Defendants.

No. CV 82–230–BLG.

United States District Court,
D. Montana,
Billings Division.

Jan. 26, 1983.

Rodney T. Hartman, Herndon, Harper &
Munro, Billings, Mont., and James Seykora,
Hardin, Mont., for plaintiffs.

Francis Lamebull, Harlem, Mont., Thom-
as R. Acevedo, Fredericks & Pelcyger, Boul-
der, Colo., for Crow Tribe defendants.

Clarence T. Belue, Hardin, Mont., for de-
fendant Leroy Sage, a minor, by Flora Not
Afraid, his guardian.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

This matter is before the Court on plain-
tiff's application for preliminary injunction

and motions to dismiss by the defendants. For the reasons discussed below, this Court has determined that the Crow Tribal Court did not have subject matter jurisdiction over the civil suit that formed the basis for the Crow Tribal Court action that is sought to be enjoined. Because the opinion of the Court is dispositive of the instant case as it concerns this Court, a permanent injunction will issue.

## FACTS

On May 27, 1982, Leroy Sage, an enrolled Indian of the Crow Tribe and a minor, was struck by a motorcycle in the Lodge Grass Elementary School parking lot while returning from a school-sponsored activity. The land on which the Lodge Grass School is located, although within the exterior boundaries of the Crow Reservation, is owned by the State, with a mineral reservation held by the Tribe. *Crow Allotment Act of 1920* § 16. Leroy Sage suffered a broken leg for which medical bills, presently incurred and estimated future expenses, total $3000. Through his guardian Flora Not Afraid and attorneys, Leroy Sage brought suit against Lodge Grass School District No. 27 in Crow Tribal Court requesting $153,000 in damages ($150,000 pain and suffering, $3000 actual and future medical expenses).

Process was served by Dexter Falls Down on Wesley Falls Down, School Board Chairman for Lodge Grass School District No. 27. For some reason, Wesley Falls Down failed to notify anyone that a suit had been brought for the injuries to Leroy Sage. The principal, secretary and superintendent of the Lodge Grass Elementary School and directors of the Lodge Grass School District No. 27 (excluding, presumably, Mr. Falls Down) had no knowledge of the suit. Because no one notified National Farmers Union Insurance Companies [National Farmers], the insurance carrier, no preparation to investigate or defend the claim was made.

According to documents filed with this Court, service of summons and complaint was made by Dexter Falls Down on Wesley Falls Down on September 28, 1982. A default judgment was taken on October 19, 1982, twenty-one days after service was made on Wesley Falls Down. A copy of the default judgment was hand delivered by Wesley Falls Down to the principal of Lodge Grass Elementary School in late October. The insurer of the Lodge Grass School District No. 27, plaintiff in this action, was unaware of the claim and judgment until its local adjuster received from the school principal a copy of the $153,000 judgment on October 29, 1982.

## PROCEDURE

On November 3, 1982, plaintiff received a temporary restraining order from this Court restraining Leroy Sage from executing on the default judgment taken October 19, 1982 in Crow Tribal Court. The temporary restraining order expired on November 13, 1982, and was not renewed. A hearing on defendants' motion to dismiss and plaintiffs' request for a preliminary injunction was held on December 14, 1982. On December 29, 1982, this Court issued an order granting plaintiffs a permanent injunction against any execution of the Tribal Court judgment. The rationale for the injunction was that the Crow Tribal Court lacked subject matter jurisdiction over the tort that was the basis of the default judgment.

## FEDERAL COURT JURISDICTION

The Crow Tribal Court [Tribal Court] cannot extend its jurisdiction beyond its legal limits. This Federal District Court has the jurisdictional power under 28 U.S.C. § 1331 to determine whether the Tribal Court has exceeded the lawful limits of its jurisdiction. Section 1331 gives district courts jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." The jurisdictional question raised by plaintiff's verified complaint, paragraph No. 14, places at issue the extent of tribal court civil jurisdiction over non-Indians as developed by the Supreme Court in *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981)— developments that are not drawn from any specific statute or treaty, but raise the overriding federal interest in determining

the extent of tribal sovereignty and therefore form a part of federal common law. That federal question jurisdiction under 28 U.S.C. § 1331 can be based on federal common law is well settled. *See, Illinois v. City of Milwaukee, Wisconsin,* 406 U.S. 91, 99–100, 92 S.Ct. 1385, 1390–91, 31 L.Ed.2d 712 (1972).

This Court's acquisition of jurisdiction by way of federal common law to examine the correctness of a tribal court's exercise of civil jurisdiction, is not a novel one. *Cardin v. DeLaCruz,* 671 F.2d 363 (9th Cir.1982) (Cardin); *Swift Transportation, Inc. v. John,* 546 F.Supp. 1185 (D.Ariz.1982) (Swift); *Babbitt Ford, Inc. v. Navajo Indian Tribe,* 519 F.Supp. 418 (D.Ariz.1981). The necessity of a proper forum wherein the extent of tribal court jurisdiction can be determined can hardly be overemphasized.

Plaintiff initially claimed that the manner in which notice was given or not given in the tort claim on which default was taken, was a violation of the Indian Civil Rights Act, 25 U.S.C. § 1302 (ICRA). This Court may be without jurisdiction to determine if the ICRA was complied with by the Tribal Court. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe,* 634 F.2d 474 (9th Cir.1980); *R.J. Williams Co. v. Fort Belknap Housing Authority,* 509 F.Supp. 933 (D.Mont.1981). *But see, Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes,* 623 F.2d 682 (10th Cir.1980). Because the Court finds that the Tribal Court did not

have jurisdiction over the tort claim between Leroy Sage and the School district, there is no need to examine this Court's jurisdiction to determine if the ICRA was complied with by the Tribal Court.[1]

## TRIBAL COURT JURISDICTION

■ An analysis of Tribal Court jurisdiction must begin with the nature of the parties and the location of the incident. There is no dispute that Lodge Grass School District No. 27 is a non-Indian; indeed, the School District is a subdivision of the sovereign government of the State of Montana. There is no dispute that the alleged tort occurred on school grounds, and that the school grounds are non-Indian land. *Crow Allotment Act of 1920,* § 16, printed in Kappler, *Indian Affairs: Laws and Treaties,* Vol. IV, p. 277 (1928).[2]

Does the Crow Tribal Court have subject matter jurisdiction over the tort claim of Leroy Sage against Montana School District of Lodge Grass No. 27? Here the Tribe seeks jurisdiction over a non-Indian, for events on non-Indian land, although within Reservation boundaries. If the Tribal Court is to have jurisdiction over the tort claim then it has jurisdiction because either: 1) the power has been delegated to the Tribe by Congress through statute, or by the President with advice and consent of the Senate through a treaty, or 2) the power has been retained by the Tribe as an element of inherent sovereignty even after the Tribal nation became a quasi-sovereign

---

1. The Court leaves the following issue for resolution at a later date: Does a violation of the Constitutional right to due process claimed by a non-Indian, arising out of an event occurring on non-Indian land within the boundaries of an Indian Reservation, state a claim for relief that may be litigated in federal court?

2. "That there is hereby granted to the State of Montana for common-school purposes sections 16 and 36 within the territory described herein, or such parts of said sections as may be non-mineral or nontimbered, and for which the said State has not heretofore received indemnity lands under existing laws; and in case either of said sections or parts thereof is lost to the State by reason of allotment or otherwise, the governor of said State, with the approval of the

Secretary of the Interior, is hereby authorized to select other unoccupied, unreserved, nonmineral, nontimbered lands within said reservation, not exceeding 2 sections in any one township. The United States shall pay the Indians for the lands so granted $5 per acre, and sufficient money is hereby appropriated out of the Treasury of the United States not otherwise appropriated to pay for said school lands granted to the said State: *Provided,* that the mineral rights in said school lands are hereby reserved for the benefit of the Crow Tribe of Indians as herein authorized: *Provided further,* that the Crow Indian children shall be permitted to attend the public schools of said State on the same condition as the children of white citizens of said State."

within the exterior boundaries of the United States.

A thorough search of the relevant literature has failed to reveal any congressional legislation or treaties delegating civil jurisdiction over non-Indians to the Crow Tribe. The Tribal Court extended its jurisdiction to the tort on the basis of the Crow Tribal Code [CTC], § 3–2–205, which states: "The Crow Tribal Court shall have jurisdiction over all civil causes of action arising within the exterior boundaries of the Crow Indian Reservation . . . ." It is apparent that the breadth of this jurisdictional granting statute is, at least, limited by decisions of the United States Supreme Court. While the Tribe may point to CTC § 3–2–205 as a jurisdictional grant, there is no statutory grant from the United States Congress or treaty that gives the Crow Tribe power to give itself such a broad jurisdictional grant.

The remaining basis on which the Tribe could assert jurisdiction—retained power of inherent sovereignty—was recently dealt with by the United States Supreme Court in *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) (*Montana*). *Montana* established "that the dependent status of Indian Tribes has implicitly divested the tribes of the power to regulate, *in general,* 'the conduct of non-Indians on land no longer owned by, or held in interest for the tribes'." *Cardin* at 366 (emphasis in original) (citation omitted).

The general rule, as stated in *Montana,* in favor of a lack of Tribal jurisdiction over the non-Indian defendant when the contested circumstances occurred on land no longer owned by or held in trust for the Tribe was qualified by Justice Stewart in *Montana:*

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on the reservations, even [though] on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of non-members who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. *Montana,* at 565–66, 101 S.Ct. at 1258 (citations omitted).[3]

Next, it must be determined if the factual circumstances of the alleged tort are within either of *Montana*'s narrow exceptions allowing Tribal jurisdiction over non-Indians. Is the dispute between the school district and the injured schoolboy one that questions the Tribe's ability to regulate, through taxation or licensing, the activity of the non-Indian school district? No, the dispute does not involve a contract, lease or other consensual commercial arrangement; instead, a personal injury is the center of the dispute. Hence, there is no Tribal jurisdiction over the alleged tort based on any "consensual relationship" between the Tribe and the school district and, therefore, the first exception to the general rule does not apply.

The second exception to the general rule in *Montana* that may allow Tribal court jurisdiction over non-Indians, speaks to non-contract claims. A Tribe may retain civil jurisdiction over the conduct of non-Indians on fee lands within the reservation when the conduct in question threatens or has some direct effect on the political integrity, the economic security, or the health or welfare *of the Tribe. Montana,* at 566, 101 S.Ct. at 1258–59. Emphasis is properly placed on the final phrase of the test: "of the tribe". A personal injury obviously af-

---

**3.** It is worth noting that the dissenting opinion in *Montana,* joined by two Justices, dissents from the opinion of the Court only with respect to its holding that treaty provisions did not retain ownership of the bed of the Big Horn River in the Crow Tribe. *Montana* at 569, 101 S.Ct. at 1259. The dissenters apparently agree with the analysis of the majority, as applied in the instant case by the Court, holding that inherent sovereignty without a treaty or congressional approval is insufficient to give tribal court jurisdiction over civil disputes involving non-Indians for events on non-Indian land.

fects the health and welfare of the injured individual, but an individual is not a Tribe. It cannot be reasonably argued that the injuries to Leroy Sage affect the health and welfare of the Crow Tribe. Therefore, neither prong of the exceptions to the general rule in *Montana* analysis is satisfied and it must be concluded that the Tribal court is without jurisdiction to pass judgment on the alleged tort.

This Court's focus on the lack of effect of the tort claim on the Crow Tribe, *qua* tribe, has substantial case law support as the following quotation from *Swift* reveals:

> The Court of course understands that an automobile accident [involved in Swift] can have a "direct effect on ... the economic security, or the health or welfare "of the individuals involved." Under this second portion of the test, however, the focus is on the interests of the Tribe rather than the interests of the individual members of the Tribe. This distinction is reflected in the cases cited in *Montana,* as well as subsequent cases applying this aspect of the test. *Cardin, supra,* 519 F.Supp. 418 (tribe's interest in enforcing building, health and safety regulations); *Knight v. Shoshone and Arapahoe Indian Tribes,* 670 F.2d 900 (tribe's interest in enforcing zoning ordinance); *Babbitt Ford, supra,* 519 F.Supp. 418 (tribe's interest in enforcing repossession statute). Limiting Tribal Court jurisdiction over non-Indians to cases involving a direct effect on the Tribe itself is also consistent with *Montana*'s "general proposition" that Tribal powers do not extend to non-members. *Swift* at 1193.

Tribal interests are not threatened by eliminating tribal jurisdiction to try a single tort. The Tribe may respond that an abundance of torts considered collectively and not individually, may, in some way, threaten Tribal sovereignty. But this argument of aggregation must fail because it destroys the distinction made by the Supreme Court between matters that do affect the welfare of the Tribe, and those matters that do not. If such aggregates were considered to confer Tribal Court jurisdiction and the aggre-

gate but not the individual event was sufficient to grant Tribal jurisdiction, then the distinction between individual controversies that do and do not warrant Tribal jurisdiction disappears. The distinction disappears because, presumably, all individual circumstances insufficient in themselves to confer Tribal Court jurisdiction could be hypothetically aggregated to yield an effect sufficient for the Tribe to invoke jurisdiction. This Court cannot consider an argument that so directly contradicts the holding in *Montana;* we can consider only the effect of the single tort on the Tribe as a whole and not a hypothetical aggregation.

As those familiar with Indian law are aware, the law changes rapidly in this area. An old case is old law. The Tribe points to *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) for the proposition that the Tribe has jurisdiction over civil claims against non-Indians. In this Court's opinion, the concern of *Williams*—that the exercise of state court jurisdiction would infringe on the right of reservation Indians to make their own laws and be ruled by them—does not exist here. Further, the *Montana* analysis specifically addresses the civil jurisdiction of a Tribe over non-Indians, while *Williams* held that it was "immaterial that respondent is not an Indian." *Williams,* at 223, 79 S.Ct. at 272.

The above analysis of Tribal court jurisdiction shows that civil jurisdiction over torts committed by non-Indians is not necessary to protect Tribal self-government, economic security or the health and welfare of the Tribe and, hence, cannot survive without express Congressional approval. Congress has not delegated that power to the Tribe. Therefore, when the Tribe extended its civil jurisdiction to include the suit between Leroy Sage and the Lodge Grass School District, the Tribe was asserting a power it did not have. *See, UNC Resources, Inc. v. Benally,* 518 F.Supp. 1046 (Ariz.1981).

## STATE COURT JURISDICTION

If the Tribal Court does not have jurisdiction over the claim of Leroy Sage

against the School District, is Sage without a court of competent jurisdiction to hear his claim? No, the state courts of Montana are the proper courts for his claim against the School District. It is inconceivable that the United States Supreme Court in *Montana* would obligate this Court to apply a jurisdictional test that would allow a wrong to occur without a forum to redress that wrong.

Because the tort claim does not present grounds for federal jurisdiction, the tort belongs in state court. "[A]n Indian has the same rights as are accorded to any other person to invoke the jurisdiction of state courts to protect his legal rights in matters not affecting either the federal government or tribal relations.... The propriety of suits by Indians against non-Indians in state courts has been recognized and approved by the Supreme Court of the United States [in] *Williams v. Lee,* 358 U.S. 217 [79 S.Ct. 269, 3 L.Ed.2d 251] (1959)." *Paiz v. Hughes,* 76 N.M. 562, 417 P.2d 51, 52 (N.M.1966) (citations omitted).

The state district court of Montana should not be reluctant to take jurisdiction over this tort claim simply because there is an Indian plaintiff. "Enrolled members of Indian tribes within Montana are citizens of the United States and citizens of Montana. An Indian is entitled, as any other citizen to bring an action in the courts of this state." *Bad Horse v. Bad Horse,* 163 Mont. 445, 449, 517 P.2d 893, *cert. denied,* 419 U.S. 847, 95 S.Ct. 83, 42 L.Ed.2d 76 (1974). *See also, Woodtick v. Crosby,* 169 Mont. 38, 544 P.2d 812 (1976); *McCrea v. Busch,* 164 Mont. 442, 524 P.2d 781 (1974); *Iron Bear v. District Court,* 162 Mont. 335, 512 P.2d 1292 (1973).

## REMEDY

■ This Court will issue a preliminary injunction to prevent execution of the Tribal Court default judgment if the test set out by the Ninth Circuit Court in *William Inglis & Sons Baking Company v. ITT Continental Baking Company,* 526 F.2d 86 (9th Cir.1975), has been met. The test requires that the party seeking the injunction show either probable success on the merits of the

controversy and the possibility of irreparable injury, *or* that serious questions are raised and the balance of hardships is tipped sharply in favor of the party seeking the injunction. *Id.* at 88.

As the previous sections of this opinion set forth, the Tribal Court was without jurisdiction in the dispute between Leroy Sage and the School District. The defendant School District and its insurer, National Farmers, face serious harm if the invalid judgment is executed upon, and that harm clearly outweighs any burden an injunction would impose on Leroy Sage. Without an injunction, the School District is threatened by irreparable harm in that the School District may be forced to pay, without its day in Court, a $153,000 default judgment for the broken leg suffered by Leroy Sage. Without the intervention of this Court, there is no other recourse available to the School District. This opinion establishes the success of the School District based on the claim that the Crow Tribal Court was without jurisdiction; hence a preliminary injunction is proper.

Because this Court finds a lack of Tribal Court jurisdiction, this ruling is therefore dispositive of the matter, and it is appropriate for a permanent injunction to issue. The permanent injunction issued by this Court enjoins Leroy Sage, his guardian Flora Not Afraid, and anyone acting on their behalf from attempting to enforce or execute the default judgment issued by the Crow Tribal Court in its case No. Civil 82–287, or from attempting to enforce any Crow Tribal Court judgment based on the injury suffered by Leroy Sage at the Lodge Grass School on or about May 27, 1982.

## CONCLUSION

In the words of Felix Cohen, "the extent of Tribal civil jurisdiction over the non-Indian is not fully determined." F. Cohen, *Handbook of Federal Indian Law,* p. 253 (1982 ed.). This Court has followed the analysis suggested by the Supreme Court in *Montana* for determining the extent of tribal civil jurisdiction over a non-Indian, and found that the commission of a tort by a

non-Indian on non-Indian land does not sufficiently affect the health and welfare of the Crow Tribe to invoke Tribal jurisdiction. Because Tribal jurisdiction is absent and both parties in the original tort claim are Montana citizens, the State of Montana can protect its interests and assert jurisdiction over the tort claim.

An appropriate order conforming to this Memorandum Opinion was issued by the Court on December 29, 1982.