**NATIONAL FARMERS UNION INSURANCE COMPANIES, a Utah corporation, and Lodge Grass School District No. 27, Plaintiffs-Appellees,**

v.

**CROW TRIBE OF INDIANS, et al., Defendants-Appellants.**

Nos. 83–3606, 83–3645.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1983.

Decided July 3, 1984.

Rodney T. Hartman, Herndon, Harper & Munro, Billings, Mont., for plaintiffs-appellees.

Scott McElroy, Thomas R. Acevedo, Fredericks & Pelcyger, Boulder, Colo., for Crow Tribe.

Clarence T. Belue, Hardin, Mont., for Sage and Not Afraid.

Before WRIGHT, ANDERSON and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

In May of 1982, Leroy Sage, a minor and an enrolled member of the Crow Indian Tribe, was struck by a motorcycle while in the parking lot of Lodge Grass School District No. 27. The School District is located on land owned by the State of Montana and within the exterior boundaries of the Crow Indian Reservation. Sage and his guardian, Flora Not Afraid, filed a negligence suit against the school district in Crow Tribal Court. Tribal process was served on the chairman of the school board, but the school district failed to answer Sage's complaint or to appear in tribal court to contest its jurisdiction. Sage ultimately obtained a default judgment against the school district. Upon receiving notice of the default judgment, the school district notified its insurer, National Farmers Union Insurance (National), of the tribal suit. Neither the school district nor National contested the default judgment in Crow Tribal Court, *see* Crow Tribal R.Civ. P. 17, or sought an appeal to the Crow Tribal Court of Appeals, *see* Crow Tribal Code § 31–1–103; Crow Tribal R.App.P. 2. Instead, National obtained a temporary restraining order from a federal district court prohibiting Sage from enforcing his

default judgment, and filed suit against the Crow Tribe, the Crow Tribal Council, the Crow Tribal Court, tribal judges and the chairman of the tribal council, seeking a permanent injunction.[1] On December 29, 1982, the district court entered a permanent injunction prohibiting Sage, Not Afraid, their counsel, the tribal judges and the chairman of the tribal council from executing on any judgment or pressing any claim against National or the school district arising from Sage's injury. We reverse.

■ The district court held that it had jurisdiction over the suit under 28 U.S.C. § 1331 (1976),[2] and ruled that National's claim arose under federal common law. *See National Farmers Union Insurance v. Crow Tribe of Indians*, 560 F.Supp. 213, 214–15 (D.Mont.1983). National's complaint alleged that the tribal court violated the federal constitution and the Indian Civil Rights Act, 25 U.S.C. §§ 1301–41 (1976) (ICRA), by asserting jurisdiction over the school district. The district court declined to decide whether allegations of deprivation of constitutional rights or violations of the Indian Civil Rights Act stated a claim for federal relief. *See* 560 F.Supp. at 215 & n. 1. Instead, the court ruled that the allegation that a tribal court had improperly exercised its jurisdiction stated a federal common law claim, because "[t]he necessity of a proper forum wherein the extent of tribal court jurisdiction can be determined can

hardly be overemphasized." *Id.* at 215. Proceeding to the merits of National's claim, the court held that the Crow Tribal Court lacked subject matter jurisdiction over Sage's suit and, therefore, entered a permanent injunction.[3]

In *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979, 981–82 (9th Cir.1983), decided after the district court's decision in this case, we held that a complaint challenging a tribal court's assertion of jurisdiction over a non-Indian defendant in a civil suit stated no federal claim for relief. We conclude that *R.J. Williams* controls this case. Accordingly, we reverse.

## DISCUSSION

■ National's complaint, as amended, alleges that the tribal court's exercise of jurisdiction over its insured deprived it of due process and equal protection. Indian Tribes are not constrained by the provisions of the fourteenth amendment. *See R.J. Williams*, 719 F.2d at 982; *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe*, 634 F.2d 474, 476–77 (9th Cir.1980). National's due process and equal protection claims cannot, therefore, arise under the Constitution. *R.J. Williams*, 719 F.2d at 981. Tribes are, however, bound by the provisions of the ICRA. *Id.* The ICRA requires tribal courts to exercise their jurisdiction in a manner con-

---

**1.** The parties later stipulated to the joinder of Sage and Not Afraid as additional defendants.

**2.** As we noted in *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979, 981 (9th Cir.1983), a court may take jurisdiction under 28 U.S.C. § 1331 if it must make a determination of law in order to determine whether plaintiff has stated a federal claim.

**3.** The district court's analysis of subject matter jurisdiction assumed that the tribe's adjudicatory authority must be coextensive with its regulatory authority. Although our disposition of the case makes it unnecessary to reach the merits of National's jurisdictional argument, we find this assumption untenable. Cases are commonly adjudicated in forums that would lack the authority to regulate the subject matter of the disputes. *See generally Allstate Insurance Company v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66

L.Ed.2d 521 (1981). In analyzing whether a dispute may be decided in a particular state or federal court, we have inquired only whether the court's exercise of jurisdiction is authorized by applicable forum law and whether it comports with due process. *See, e.g., Keeton v. Hustler Magazine,* —— U.S. ——, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). The jurisdictional question is not controlled by whether it would be appropriate to apply the forum's substantive law to the dispute. *See Shaffer v. Heitner,* 433 U.S. 186, 215, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683 (1977). The tribal character of a challenged forum does not alter the essential nature of this inquiry. "Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 65, 98 S.Ct. 1670, 1680, 56 L.Ed.2d 106 (1978).

sistent with due process and equal protection. 25 U.S.C. § 1302(8). Congress has expressly limited federal court review of a claimed violation of the ICRA to encompass a single remedy: the writ of habeas corpus. 25 U.S.C. § 1303. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 66–70, 98 S.Ct. 1670, 1681–1683, 56 L.Ed.2d 106 (1977); *Boe v. Fort Belknap Indian Community,* 642 F.2d 276, 278 (9th Cir.1981). A civil suit to enjoin violations of the ICRA is not cognizable in federal court. *Santa Clara Pueblo,* 436 U.S. at 67–70, 98 S.Ct. at 1681–1683; *accord R.J. Williams,* 719 F.2d at 981. Neither the constitution nor the ICRA provides a basis for a federal cause of action.

National urges us, however, to recognize a cause of action arising under federal common law that would permit a civil suit to enjoin the proceedings of a tribal court. National's argument has superficial appeal. It invokes authority holding that a complaint challenging tribal abuse of its civil *regulatory* jurisdiction states a claim arising under federal common law. *See, e.g., Babbitt Ford, Inc. v. Navajo Indian Tribe,* 710 F.2d 587, 591 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984); *Cardin v. De La Cruz,* 671 F.2d 363, 365, *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982). The Supreme Court relied on principles of federal common law to determine whether a tribal court had exceeded its jurisdiction in *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). The question whether a tribe has abused its adjudicatory jurisdiction seems, at first glance, to be as appropriate as a question involving tribal regulatory jurisdiction for resolution in a suit brought in federal court.

*Oliphant v. Suquamish Indian Tribe,* however, came to the federal courts by way of a petition for habeas corpus. *See* 435 U.S. at 194, 98 S.Ct. at 1013. Congress, when it enacted the ICRA, purposefully restricted federal court interference with the proceedings of tribal courts to review on petitions for habeas corpus. *See Santa Clara Pueblo,* 436 U.S. at 67–70, 98 S.Ct. at 1681–1683. In asking that we recognize a civil cause of action arising under federal common law, National is requesting that we supplement a remedy Congress intended to be exclusive, and that we do so without statutory authority.[4]

The judicial recognition of a cause of action arising under federal common law is an unusual course, to be approached cautiously. *Milwaukee v. Illinois,* 451 U.S. 304, 312–14, 101 S.Ct. 1784, 1789–91, 68 L.Ed.2d 114 (1981). In view of Congress's manifest purpose to limit the intrusion of federal courts upon tribal adjudication, *see Santa Clara Pueblo,* 436 U.S. at 67–70, 98 S.Ct. at 1681–1683, we decline to recognize a common law cause of action in addition to the limited remedies available under the ICRA. We conclude that National may not assert its claim as one arising under common law. National's complaint must be dismissed for failure to state a claim for federal relief.[5]

The district court was rightly concerned that there must be a "proper forum where-

---

**4.** National's arguments for a common law cause of action are also not advanced by *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). *Montana* arose as a declaratory judgment action brought by the United States in its trusteeship capacity. 450 U.S. at 549, 101 S.Ct. at 1250. The district court had jurisdiction of the suit under 28 U.S.C. § 1345 (1976). Moreover, *Montana* involved limitations of an Indian tribe's regulatory jurisdiction. 450 U.S. at 557–67, 101 S.Ct. at 1254–59. As noted above, a tribe's abuse of regulatory juris-

diction may create a federal cause of action. A tribe's assumption of adjudicatory jurisdiction, however, does not.

**5.** Because we conclude that National's complaint must be dismissed for failure to state a federal claim, we need not reach the other issues raised by the parties. We intimate no views on questions involving sovereign immunity, exhaustion of tribal remedies, state court jurisdiction over Sage's negligence suit or the merits of National's jurisdictional challenge.

in the extent of tribal court jurisdiction can be determined ...." 560 F.Supp. at 215. However, the proper forum for this determination, at least in the first instance,[6] is not a federal court but a tribal court. *See Santa Clara Pueblo*, 436 U.S. at 65, 98 S.Ct. at 1680; *R.J. Williams*, 719 F.2d at 983.

REVERSED.

EUGENE A. WRIGHT, Circuit Judge, dissenting in part and concurring in the result:

I agree that we must reverse but dissent from the holding that we lack subject matter jurisdiction. Instead, I would hold that the plaintiffs stated a federal common law cause of action, but would dismiss because they failed to exhaust tribal remedies.

### I.

The court holds today that, while a plaintiff may state a federal common law cause of action for tribal abuse of its *regulatory* jurisdiction, it may not state a cause of action for abuse of its *adjudicatory* jurisdiction. This distinction lacks foundation in law or policy.

We have held that "the extent to which treaties and federal case law divest [a] tribe of the power to exercise civil jurisdiction over non-Indians" presents a federal question under 28 U.S.C. § 1331 (1982). *Babbitt Ford, Inc. v. Navajo Indian Tribe*, 710 F.2d 587, 591 (9th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984). *Accord, Cardin v. De La Cruz*, 671 F.2d 363, 365 (9th Cir.1982), *cert. denied*, 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982).

It is clear too that a plaintiff may state a federal cause of action for improper taxation by an Indian tribe. *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982); *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1321 (9th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984).

The majority distinguishes these cases by noting that they all concerned alleged abuses of tribal regulatory jurisdiction, while our case concerns action by a tribal court. This distinction cannot be found in the cases and rests upon a strained reading of their facts.

Both *Babbitt Ford* and *Cardin* involved underlying actions in tribal courts against non-Indians. In *Babbitt Ford*, the tribal court held the non-Indian violated a tribal repossession regulation. 710 F.2d at 590–91. In *Cardin*, the tribal court closed a grocery store based on the owner's non-compliance with tribal building, health, and safety regulations. 671 F.2d at 364–65. In each, the tribal court action was the immediate cause of the federal claim.

Admittedly, in each case the tribal court applied a rule of decision supplied by tribal regulations. It is difficult to believe, however, that our jurisdiction should turn on the *source* of the tribal rule.

If the tribal court in *Cardin* had closed the grocery store because it was deemed a public nuisance under tribal common law, the harm to the owner and the implicit question of tribal authority would have been the same. Under the majority's analysis, the closure based on tribal regulations would create a federal question while the closure based on the tribal court's interpretation of common law would not.

The distinction between adjudication and regulation may have some application in this area of law. Adjudicatory jurisdiction is often broader than regulatory jurisdiction, because a forum's authority to adjudicate a controversy does not depend on its authority to regulate the underlying subject matter. *See supra*, at 1316 n. 3, *and cases cited therein*. But this distinction goes to the merits. It involves the propriety of the tribal court's assertion of jurisdiction. It does not affect the existence of a federal question.

---

**6.** Should Sage seek to enforce his default judgment in the courts of Montana, National may, of course, challenge the tribal court's jurisdiction in the collateral proceedings. *See generally Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).

The majority suggests that recognizing a cause of action for abuse of tribal court jurisdiction would conflict with *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). There, the Supreme Court held that habeas corpus provides the sole federal remedy for alleged violations of the Indian Civil Rights Act (ICRA), 25 U.S.C. §§ 1301–1341 (1982). 436 U.S. at 70, 98 S.Ct. at 1683.

As noted above, however, *Santa Clara Pueblo* has not prevented us from finding that a federal *common law* cause of action exists for abuse of tribal jurisdiction. *Babbitt Ford*, 710 F.2d at 591; *Cardin*, 671 F.2d at 365. Neither *Santa Clara Pueblo* nor the ICRA provide a basis for distinguishing between regulatory and adjudicatory actions by tribes.

The ICRA applies broadly to tribal "powers of self-government" which include "all governmental powers possessed by an Indian tribe, executive, legislative and judicial, and all offices, bodies, and tribunals by and through which they are executed." 25 U.S.C. §§ 1301(2), 1302. *Santa Clara Pueblo* did not distinguish between regulatory and judicial actions. In fact, the underlying dispute involved a tribal regulation. 436 U.S. at 51, 98 S.Ct. at 1673. A federal common law cause of action for abuse of tribal jurisdiction would be no more intrusive here than in *Babbitt Ford, Snow,* or *Cardin.*

Although I question the majority's distinction between regulation and adjudication, I would join its opinion if I agreed that it was compelled by *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979 (9th Cir.1983), *petition for cert. filed,* —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d —— (U.S. April 27, 1984).

*R.J. Williams* involved a claim for damages by a contractor against a tribal housing authority which had obtained a tribal court writ seizing the contractor's property. The suit alleged jurisdiction based on diversity, the United States Constitution, the ICRA, and 42 U.S.C. § 1983. It did not allege general federal question jurisdiction under federal common law, as in *Babbitt*

*Ford* and *Cardin.* We held that the plaintiffs failed to allege a proper basis for federal court jurisdiction. *Id.* at 985.

General federal question jurisdiction might have been proper in *R.J. Williams,* at least for the portions of the complaint which sought non-monetary relief. But the plaintiff's failure to allege or argue this basis for our jurisdiction distinguishes *R.J. Williams* from the present case. *See Cardin,* 671 F.2d at 365 n. 2 (distinguishing *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe*, 634 F.2d 474 (9th Cir.1980), because the plaintiff there had not alleged general federal question jurisdiction).

I conclude that plaintiffs have stated a substantial federal question. Subject matter jurisdiction over their claim was proper under 28 U.S.C. § 1331.

## II.

My difference with the majority does not stem from any fundamental conflict over the policies at stake. Tribal courts are appropriate forums for the resolution of many disputes involving both Indians and non-Indians. *Santa Clara Pueblo*, 436 U.S. 65, 98 S.Ct. 1680. Federal courts must be hesitant to intervene in their proceedings, both as a matter of comity and to further the federal policy of protecting and strengthening tribal institutions. *Janis v. Wilson*, 521 F.2d 724, 727 (8th Cir.1975). *See Santa Clara Pueblo*, 436 U.S. at 62–64, 98 S.Ct. at 1679–1680.

I agree with the majority that the "proper forum for [determining the scope of tribal court jurisdiction], at least in the first instance, is not a federal court but a tribal court." *See supra,* at 1323–24. The plaintiffs never afforded the tribal court the opportunity to rule on their jurisdictional claim. That alone makes federal court intervention at this stage inappropriate.

The majority, however, makes the tribal court the first *and last* arbiter of its own jurisdiction. An assertion of tribal court jurisdiction, no matter how far reaching, would not be subject to review in any fed-

eral court. If, for instance, a tribal court decided to adjudicate a controversy between a non-Indian plaintiff and a non-Indian defendant involving matters arising outside the reservation, its power would be limited only by the presence of seizable assets within the reservation. *See supra,* at 1324 n. 6 (indicating that tribal court defendants may seek review of tribal jurisdiction in collateral enforcement proceedings).

The interests that counsel non-intervention in tribal proceedings can be accommodated by less drastic means. Specifically, we should require plaintiffs to exhaust their remedies in tribal courts before seeking federal intervention.

There is precedent for this approach. Before the Supreme Court decided that the ICRA did not confer general federal jurisdiction over Indian civil rights actions, *Santa Clara Pueblo,* 436 U.S. at 72, 98 S.Ct. at 1684, we imposed an exhaustion requirement on plaintiffs seeking to bring those claims. *See, e.g., Howlett v. Salish & Kootenai Tribes of the Flathead Reservation,* 529 F.2d 233, 239 (9th Cir.1976); *St. Marks v. Chippewa-Cree Tribe of Rocky Boy Reservation,* 545 F.2d 1188 (9th Cir.1976). *Accord, McCurdy v. Steele,* 506 F.2d 653, 656–57 (10th Cir.1974); *O'Neal v. Cheyenne River Sioux Tribe,* 482 F.2d 1140 (8th Cir.1973).

The exhaustion requirement stated in these cases is not inflexible. *St. Marks,* 545 F.2d at 1189. To determine whether exhaustion is appropriate in a given case, we must first determine whether (1) meaningful tribal remedies exist, and (2) exhaustion will serve the purposes of comity and strengthening tribal institutions. Finally, the court must balance the need to preserve and strengthen tribal institutions against any immediate need that would exist to adjudicate the plaintiff's alleged federal rights. *Id.*

Applying that test here, it seems that meaningful tribal remedies exist. The Crow Tribal Code would allow the plaintiffs to challenge the tribal court's jurisdiction. Crow Rules of Civil Procedure, Rules 7(a) (permitting challenge to lack of personal or subject matter jurisdiction), 17 (permitting motion to set aside default judgment).

Second, requiring exhaustion here would strengthen the tribal court system. The plaintiffs ignored that system and instead attempted to circumvent it by suing immediately in federal court. Such disrespect for tribal institutions should be discouraged.

Finally, our interest in respecting and upholding the authority of the tribal court to determine, in the first instance, its own jurisdictional bounds exceeds any immediate need for federal court jurisdiction asserted by the plaintiffs. These factors indicate that the district court should have required the plaintiffs to exhaust their tribal remedies.

III.

The majority and I reach the same result by significantly different paths. I fear, however, that the majority's jurisdictional approach will haunt us in other cases, by creating unworkable distinctions and by barring relief in cases where it is necessary and appropriate. In contrast, the exhaustion approach is flexible and closely tailored to the interests at stake.