# NATIONAL FARMERS UNION INSURANCE COMPANIES ET AL. v. CROW TRIBE OF INDIANS ET AL.

No. A–123 (84–320). Decided September 10, 1984

JUSTICE REHNQUIST, Circuit Justice.

Applicants National Farmers Union Insurance Cos. and Lodge Grass School District No. 27 request that I stay the mandate of the United States Court of Appeals for the Ninth Circuit which reversed the judgment of the United States District Court for the District of Montana. The latter court had enjoined the Crow Tribe of Indians from executing against the applicants on a judgment rendered by the Crow Tribal Court. The Court of Appeals for the Ninth Circuit held, as I read its opinion, that litigants who seek to challenge the exercise of jurisdiction by an Indian tribal court in a civil action have no federal-court remedy of any kind. I have concluded that four Members of this Court are likely to vote

to grant the applicants' petition for certiorari, and that the applicants have a reasonable probability for at least partial success on the merits if this Court grants certiorari. I have therefore decided that the temporary stay I earlier granted on August 21, 1984, pending consideration of a response, should be continued until this Court disposes of the applicants' petition for certiorari which was filed on August 29th.

In May 1982, Leroy Sage, a Crow Indian schoolchild, was struck by an uninsured motorcyclist on the property owned by applicant School District. The school is located on land within the external boundaries of the Crow Indian Reservation, but the land is owned by the State of Montana in fee subject to a reserved mineral interest in the Tribe. Sage sustained a broken leg, and filed suit against the School District in Crow Tribal Court.

Dexter Falls Down served process for Sage upon Wesley Falls Down; Wesley was a member of the school board. Wesley did not notify anyone of the summons and a default judgment for $153,000 was entered against the school three weeks later in Tribal Court. Actual medical bills came to $3,000. Applicants became aware of the suit when the Tribal Court mailed a copy of the judgment to the school. Instead of seeking review of the default judgment in Tribal Court, applicants filed suit in the United States District Court for the District of Montana, alleging that the Tribal Court's exercise of jurisdiction violated due process and the Indian Civil Rights Act of 1968, 82 Stat. 77, as amended, 25 U. S. C. § 1301 *et seq.* Applicants sought a permanent injunction against the execution of the Tribal Court judgment.

The District Court held that applicants' complaint, based on federal common law, stated a claim under 28 U. S. C. § 1331. 560 F. Supp. 213, 214–215 (1983). The District Court held that the Tribal Court lacked subject-matter jurisdiction over Sage's claim, because the land upon which the tort had occurred was not Indian land, and the defendants were not tribal members. The District Court relied on our

decision in *Montana* v. *United States*, 450 U. S. 544, 565–566 (1981), in reaching this conclusion.

The Tribe appealed to the Court of Appeals for the Ninth Circuit, and that court reversed over a partial dissent. 736 F. 2d 1320, 1322 (1984). The Court of Appeals reasoned on the authority of one of its prior decisions that "Indian tribes are not constrained by the provisions of the fourteenth amendment." It went on to determine that tribes are bound by the provisions of the Indian Civil Rights Act, 25 U. S. C. § 1301 *et seq.*, and that § 202(8) of this Act, 25 U. S. C. § 1302(8), requires that tribal courts exercise their jurisdiction in a manner consistent with due process and equal protection. But the court then concluded that since Congress had expressly limited federal-court review of a claimed violation of the ICRA to a single remedy—the writ of habeas corpus—there could be no federal-court review of any tribal court exercise of jurisdiction in a civil case. The Court of Appeals for the Ninth Circuit relied in part on our decision in *Santa Clara Pueblo* v. *Martinez*, 436 U. S. 49, 66–70 (1978), to reach this conclusion. The Court of Appeals recognized that our decision in *Oliphant* v. *Suquamish Indian Tribe*, 435 U. S. 191 (1978), had relied on principles of federal common law to determine whether a tribal court had exceeded its jurisdiction, but decided that our opinion the same Term in *Santa Clara Pueblo, supra,* suggested a restriction on federal-court review of Indian tribal jurisdiction as a result of the ICRA. The Court of Appeals observed in a footnote that "[s]hould Sage seek to enforce his default judgment in the courts of Montana, National may, of course, challenge the tribal court's jurisdiction in the collateral proceedings. *See generally Durfee* v. *Duke*, 375 U. S. 106 . . . (1963)." 736 F. 2d, at 1324, n. 6.

It is clear from proceedings in this case subsequent to the handing down of the opinion of the Court of Appeals that the respondents in this case have no intention of resorting to any state-court proceedings in order to enforce the judgment of

the Crow Tribal Court. After the issuance of the mandate of the Court of Appeals, tribal officials, at the behest of respondent Sage, seized 12 computer terminals, other computer equipment, and a truck from the School District. The basis for this seizure was said to be the Tribal Court judgment, and no state process was invoked.

If the Court of Appeals is correct in the conclusions which it drew in its opinion, the state of the law respecting review of jurisdictional excesses on the part of Indian tribal courts is indeed anomalous. The Court of Appeals may well be correct that tribal courts are not constrained by the Due Process or Equal Protection Clauses of the Fourteenth Amendment; long ago, this Court said in *United States* v. *Kagama,* 118 U. S. 375, 379 (1886), and repeated the statement as recently as *Oliphant* v. *Suquamish Indian Tribe, supra,* at 211:

> "'Indians are within the geographical limits of the United States. The soil and people within these limits are under the political control of the Government of the United States, or the States of the Union. There exist in the broad domain of a sovereignty but these two.'"

But if because only the National and State Governments exercise true sovereignty, and are therefore subject to the commands of the Fourteenth Amendment, I cannot believe that Indian tribal courts are nonetheless free to exercise their jurisdiction in a manner prohibited by the decisions of this Court, and that a litigant who is the subject of such an exercise of jurisdiction has nowhere at all to turn for relief from a conceded excess. Every final decision of the highest court of a State in which such a decision may be had is subject to review by this Court on either certiorari or appeal. 28 U. S. C. § 1257. Every decision of a United States district court or of a court of appeals is reviewable by this Court either by way of appeal or by certiorari. §§ 1252–1254; cf. § 1291. If the courts of the States, which in common with the National Government exercise the only true sovereignty exercised within our Nation, *Kagama, supra,* are to have

their judgments reviewed by this Court on a claim of erroneous decision of a federal question, it is anomalous that no federal court, to say nothing of a state court, may review a judgment of an Indian tribal court which likewise erroneously decides a federal question as to the extent of its jurisdiction. See *Montana* v. *United States, supra.* It may be that Congress could provide for such a result, but I have a good deal more doubt than did the Court of Appeals that it has done so.

Our decision in *Santa Clara Pueblo* v. *Martinez, supra,* which the Court of Appeals read to support its conclusion, raised the question of whether a federal court could pass on the validity of an Indian Tribe's ordinance denying membership to the children of certain female tribal members. We held that the ICRA did not imply a private cause of action to redress violations of the statutory Bill of Rights contained in the Act, and that therefore the validity of the tribal ordinance regulating membership could not be reviewed in federal court. It seems to me that this holding, relating as it did to the relationship between the right of a Tribe to regulate its own membership and the claims of those who had been denied membership, is quite distinguishable from a claim on the part of a non-Indian that a tribal court has exceeded the bounds of tribal jurisdiction as enunciated in such decisions of this Court as *Montana* v. *United States, supra.* As JUSTICE WHITE pointed out in his dissent in *Santa Clara Pueblo* v. *Martinez,* 436 U. S., at 72, "[t]he declared purpose of the Indian Civil Rights Act . . . is 'to insure that the American Indian is afforded the broad constitutional rights secured to other Americans.'" But as the Court also pointed out in its opinion, Congress entertained the additional purpose of promoting "the well-established federal 'policy of furthering Indian self-government.'" *Id.,* at 62. The facts as well as the holding of *Santa Clara Pueblo, supra,* satisfy me that Congress' concern in enacting the ICRA was to enlarge the rights of individual Indians as against the tribe while not unduly infringing on the right of tribal self-government. The fact that no

private civil cause of action is to be implied under the ICRA, *Santa Clara Pueblo, supra,* does not to my mind foreclose the likelihood that federal jurisdiction may be invoked by one who claims to have suffered from an excess beyond federally prescribed jurisdictional limits of an Indian tribal court on the basis of federal common law. See, *e. g., Illinois* v. *City of Milwaukee,* 406 U. S. 91, 99–100 (1972). We said in *Oliphant* v. *Suquamish Indian Tribe,* 435 U. S., at 206:

> "'Indian law' draws principally on the treaties drawn and executed by the Executive Branch and legislation passed by Congress. These instruments, which beyond their actual text form the backdrop for the intricate web of judicially made Indian law, cannot be interpreted in isolation but must be read in light of the common notions of the day and the assumptions of those who drafted them."

I think a fair reading of all of our case law on this subject could lead to the conclusion that even though the ICRA affords no private civil cause of action to one claiming a violation of its terms, "Indian law" as of the time that law was enacted afforded a basis for review of tribal-court judgments claimed to be in excess of tribal-court jurisdiction.

Respondents insist that under Rule 44.2 of this Court a supersedeas bond should have accompanied applicants' request for a stay. That Rule provides:

> "If the stay is to act as a supersedeas, a supersedeas bond shall accompany the motion and shall have such surety or sureties as said judge, court, or Justice may require."

I do not think that the Rule is by its terms applicable to this case. The term "supersedeas" to me suggests the order of an appellate court having authority to review on direct appeal the judgment which is superseded. All of the pro-

ceedings in the various federal courts in this case have, of course, sought no direct review of the Tribal Court judgment, which simply is not provided for by statute at all, but collateral relief. The District Court did not review the judgment of the Indian Tribal Court by way of appeal, but instead enjoined its enforcement.

It may well be that under the Federal Rules of Civil Procedure respondents would have a plausible argument to make to the District Court that an injunction bond serving somewhat the same purposes as a supersedeas bond should be required by that court so long as its injunction remains in effect. Whether such a bond should be required of either party in this case, and whether in particular it should be required of applicant Lodge Grass School District No. 27 in view of the fact that apparently under Montana law a public body is not required to post a supersedeas bond in a state-court proceeding, is an issue best left in the first instance to the District Court.

As to whether, if I am right in thinking that this Court may well decide that tribal-court judgments are subject to federal-court review for claims of jurisdictional excess, applicants would necessarily prevail, I express no opinion. The District Court held in their favor on this point, but the Court of Appeals for the Ninth Circuit found no necessity for reaching it since it held that there was no federal jurisdiction to consider it. The District Court in its opinion quoted F. Cohen, Handbook of Federal Indian Law 253 (1982), to the effect that "'the extent of Tribal civil jurisdiction over the non-Indian is not fully determined.'" 560 F. Supp., at 218. The District·Court, in reaching the conclusion it did, relied on the following language from our opinion in *United States* v. *Montana:*

"To be sure, Indian Tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation,

licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements. . . . A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U. S., at 565–566.

The court concluded that exercise of tribal jurisdiction over an injury to a tribal member occurring on non-Indian-owned fee land within the boundaries of the reservation was not within the description of Indian tribal jurisdiction. I express no opinion as to what the correct answer to this inquiry may be. I do think its correct decision is of far less importance than the correct decision of the more fundamental question of whether there is any federal-court review available to non-Indians for excesses of tribal-court jurisdiction.

*It is so ordered.*